IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

CARLOS ABREU,

               Plaintiff,

    v.

MICHAEL J. LIRA, *et al.*,

               Defendants.

Civil Action No.
9:12-CV-1385 (NAM/DEP)

APPEARANCES:

FOR PLAINTIFF:

Carlos Abreu, *Pro se*
99-A-3027
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, NY 12224

KRISTEN M. QUARESIMO, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION[1]

*Pro se* plaintiff Carlos Abreu, a New York State prison inmate, has

commenced this action against several employees of the New York State

Department of Corrections and Community Supervision ("DOCCS"),

pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights

during the course of his incarceration.[2]   Accompanying plaintiff's complaint

was a request for leave to proceed *in forma pauperis* ("IFP").   Plaintiff's IFP

application was granted by the court based upon a preliminary finding that,

although Abreu has accumulated three strikes for purpose of 28 U.S.C. §

1915(g), he qualified for the imminent-danger exception to the three strikes

provision at the time his complaint was filed.

By letter received by the court, defendants' counsel has requested

reconsideration of that earlier decision granting plaintiff leave to proceed in

the action IFP on the basis that, at the time of filing, plaintiff did not face the

---

[1]       The decision to grant an application for leave to proceed *in forma* pauperis ("IFP") falls within my non-consensual jurisdiction under 28 U.S.C. § 636(b)(1)(A). *Woods v. Dahlberg*, 894 F.2d 187, 188 (6th Cir. 1990).   A decision to deny or revoke IFP status, however, is generally regarded as dispositive and thus falls outside my purview. *Woods*, 894 F.2d at 187; *accord, Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010) ("[C]ourts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to 'determine' does not extend to rulings . . . that deny a motion to proceed *in forma pauperis*.").   Accordingly, in light of my finding that plaintiff is not entitled to proceed IFP, I have formatted this opinion as a report and recommendation.

[2]       Plaintiff named forty-seven defendants in his complaint.   *See generally* Dkt. No. 1.   Certain of those defendants have since been dismissed from the suit based upon the court's initial review of his complaint.   Dkt. No. 5.

imminent danger he alleged.   For the reasons set forth below, I agree and recommend that plaintiff's IFP status be revoked.

## I.    BACKGROUND

Plaintiff commenced this action on September 10, 2012, by the filing of a complaint dated six days earlier, as well as an application seeking leave to proceeding in the action IFP and a motion for a preliminary injunction. Dkt. Nos. 1-3.   At the time of filing, plaintiff was an inmate being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York.[3]   *See generally* Dkt. No. 1.

On February 28, 2013, Senior District Judge Norman A. Mordue issued an order granting plaintiff's IFP application, and, after reviewing the complaint for legal sufficiency pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, permitted the action to go forward with regard to plaintiff's claims of (1) deliberate indifference to his serious medical needs, (2) denial of procedural due process with respect to disciplinary hearings and the imposition of a disciplinary diet, (3) unlawful retaliation based upon the filing of grievances, (4) cruel and unusual punishment based upon the conditions of plaintiff's confinement and interference with this right to receive mail, (5)

---

[3]     Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons.   *Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

denial of access to the courts, and (6) interference with plaintiff's right to practice his religion through the denial of religious meals, in violation of both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.[4]

In his decision granting plaintiff's IFP application, Judge Mordue found that, as of the date plaintiff signed his complaint, at least three of his prior actions and appeals had been dismissed as frivolous and/or for failure to state a claim upon which relief may be granted.[5]   Dkt. No. 5 at 2-3.   He nonetheless concluded, based upon the allegations in the complaint regarding whether plaintiff received adequate medical and mental health care while at Upstate, that Abreu qualified for the imminent danger exception under the three strikes provision of section 1915(g).   *Id.* at 4. The court noted, however, that this was a "**preliminary finding**," and advised that plaintiff's IFP status would be revoked should it later be determined that he was not in fact in imminent danger of serious physical injury at the time the action was commenced.   *Id.* (emphasis in original). In a footnote, the court added that "[d]efendants are . . . entitled to refute this

---

[4]     Plaintiff's motion for a preliminary injunction was denied by decision and order issued by Judge Mordue on August 15, 2013.   Dkt. No. 63.

[5]     Judge Mordue based this finding, in part, on an earlier conclusion by Senior District Judge Lawrence E. Kahn that plaintiff had accumulated three strikes for purposes of section 1915(g).   *See* Dkt. No. 5 at 2-3 (citing *Abreu v. United States*, No. 11-CV-1104, Dkt. No. 7 (N.D.N.Y. filed Sept. 19, 2011) (Kahn, J.)).

preliminary finding in future filings." *Id.* at 5 n.5.

By letter dated July 11, 2013, defendants' counsel requested the court to reconsider its earlier IFP ruling. Dkt. No. 59. In support of their motion, defendants submitted a declaration of Nurse Practitioner Amber Lashway, one of the defendants in this action, refuting plaintiff's assertion that, at the time of filing, he faced imminent danger as a result of the medical treatment, or lack of treatment, provided to him at Upstate. Dkt. No. 59-1. Plaintiff has since responded in opposition to that motion, and the parties have filed reply and surreply papers.[6] Dkt. Nos. 66-68.

## II.   DISCUSSION

When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[7] 28 U.S.C. §§ 1915(a). Although a court is authorized

---

[6]     Ironically, in plaintiff's surreply (the filing of which violates the local rules of practice for this court in light of his failure to seek court permission prior to filing), he complains that defendants' letter motion requesting revocation of his IFP status does not comply with the local rules governing motion practice for this court. Dkt. No. 68 at 6. Because the court retains discretion to enforce the local rules for this court, and because both parties have, at different times, disregarded those rules, I deem it unnecessary to sanction either party for their violations. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

[7]     Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee. Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997)); *accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.).[8] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to undertake the same cost-benefit analysis in which other civil litigants engage before filing suit – that is, whether the result sought to be achieved justifies paying the entire filing fee in advance,

---

[8]     All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

rather than in small increments from his inmate account. *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442. To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Id.* The question of whether the dismissal of a prior action constitutes a strike for purposes of section 1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id.*

Based upon the findings of District Judges Mordue and Kahn, as well as my own independent evaluation of plaintiff's litigation history, I conclude that plaintiff had incurred at least three strikes by the time he commenced this action in September 2012. *See Abreu v. Supreme Court of the Bronx Cnty.*, No. 10-CV-1310, Dkt. No. 4 (S.D.N.Y. filed Feb. 18, 2010) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Disability Advocates, Inc.*, No. 09-CV-6306, Dkt. No. 8 (S.D.N.Y. filed July 15, 2009) (Second Circuit's mandate dismissing plaintiff's appeal because it "lack[ed] an arguable basis in law or fact"); *Abreu v. Disability Advocates, Inc.*, No. 09-CV-6306, Dkt. Nos. 3,4 (S.D.N.Y. filed July 15, 2000) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

As a safety valve, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule in section 1915(g). 28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002). In accordance with this exception, an inmate who has accrued three prior "strikes" but nonetheless wishes to commence a new action IFP must show that he was under imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three-strikes rule on the basis of past harm. *Malik*, 293 F.3d at 562-63. An inmate who claims the benefit of this exception must also allege that the danger he faces rises to the level of exposure to a "serious physical injury." 28 U.S.C. § 1915(g). The term "serious physical injury," as utilized in section 1915(g), has been construed by various courts as including an ailment that "could result in serious harm or even death[.]" *Ibrahim v. D.C.*, 463 F.3d 3, 7 (D.C. Cir. 2006); *accord, Jackson v. Jin*, No. 12-CV-6445, 2014 WL 1323211, at *1 (W.D.N.Y. Mar. 31, 2014).

The imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical. *See, e.g., Johnson v. Barney*, No. 04-CV-10204, 2005 WL 2173950, at *1-2 (S.D.N.Y. Sept. 6, 2005) (finding that the plaintiff was not entitled to qualified immunity where he alleged that

he faced a risk of harm at a facility in which he was not currently confined and may pass through infrequently).   Claims of imminent danger, moreover, must be evaluated at the point in time when a plaintiff's complaint is filed, rather than when the events alleged occurred.   *Malik*, 293 F.3d at 562-63; *accord, Pettus v. Morganthal*, 554 F.3d 293, 296 (2d Cir. 2009).

For a three-strikes litigant to qualify for the imminent danger exception, his complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts."   *Pettus*, 554 F.3d at 298. When determining whether the requisite relationship exists, a court must examine "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury."   *Id.* at 299 (emphasis in original).

In deciding whether a plaintiff qualifies to proceed IFP under the imminent-danger exception, neither the Second Circuit nor the district courts in this circuit have explicitly decided whether a court is confined the allegations contained in the complaint or instead may look to materials outside of the complaint.   In *Chavis*, the Second Circuit offered the following guidance with respect to a court's analysis of the imminent-danger exception:

> [A]lthough the feared physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the allegations qualify for the exception,' because [section] 1915(g) 'concerns only a threshold procedural question,' while 'separate PLRA provisions are directed at screening out meritless suits early on.' *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) ("Section 1915(g) is not a vehicle for determining the merits of a claim. To fine-tune what is 'serious enough' to qualify for the exception would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required.').

618 F.3d at 169-70 (alterations omitted). This language, as well as the court's analysis in *Chavis*, suggests that, when determining whether a litigant is entitled to section 1915(g)'s imminent-danger exception, a court should confine its attention to the allegations contained in a plaintiff's complaint. *See id.* at 170-71 (analyzing the plaintiff's amended complaint, and concluding that his allegations therein "by [themselves] would appear to be sufficient to allege imminent danger of serious physical injury").[9]

---

[9]    Interestingly, the Second Circuit supplemented its finding in *Chavis* that the allegations in the plaintiff's amended complaint were sufficient to satisfy the imminent-danger exception by considering "the additional assertions that [plaintiff] included in his motion for a preliminary injunction." 618 F.3d at 171. The court explained that, "[a]lthough these additional facts came in an order to show cause, rather in [plaintiff]'s motion for leave to amend, 'a party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation,' and hence 'courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally.'" *Id.* (quoting *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008)). In light of that explanation, I do not

Similarly, an analysis of at least one of the cases cited by the Second Circuit reiterates the view that courts should focus on the allegations in a plaintiff's complaint when analyzing imminent danger.[10] *See Cervantes*, 493 F.3d at 1055 ("Instead, the exception applies if the complaint makes a plausible allegation that the prisoner faced imminent danger of serious physical injury at the time of filing." (quotation marks omitted)).[11] Courts in this district have also seemingly held that an imminent-danger inquiry requires only an analysis of the allegations in the complaint. *See, e.g., Williams v. Fisher*, No. 11-CV-0379, 2013 WL 636983, at *9 (N.D.N.Y. Jan. 29, 2013) (Dancks,

construe *Chavis* to be internally inconsistent – that is, on the one hand instructing courts to consider only the four corners of a complaint when deciding an imminent danger inquiry, and on the other permitting consideration of materials outside of the complaint. Rather, I simply construe the Second Circuit's consideration of materials outside of the complaint, which were consistent with the allegations contained in the amended complaint, as yet another exercise of this circuit's practice of extending special solicitude to *pro se* litigants. *See, e.g., Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 219 (N.D.N.Y. 2008) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) ("I am mindful that, in cases where a *pro se* civil rights plaintiff is faced with a motion to dismiss for failure to state a claim, courts will often (out of special solicitude) consider materials outside the complaint to the extent they are consistent with the allegations in the complaint.").

[10] With respect to the Seventh Circuit case cited in *Chavis*, that court's decision does not indicate whether it was presented with anything except the plaintiff's allegations contained in the complaint. *See Ciarpaglini*, 352 F.3d at 331 (analyzing the defendants' argument that the plaintiff's "allegations are not serious enough" and, in any event, the "complaint. . . alleges way too much"); *see also Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) ("[I]n [*Ciarpaglini*] the defendants did not *deny* the plaintiff's allegations [regarding imminent danger]. Instead, the defendants argued that the allegations were not sufficiently *serious* to meet the imminent-danger exception [.]" (emphasis in original)).

[11] In *Cervantes*, the Ninth Circuit acknowledged that, at that time, "no other circuit has specifically addressed post-complaint changes in circumstance," 493 F.3d at 1053, which is analogous to what defendants ask the court to do in this case.

M.J.), *report and recommendation adopted by* 2013 WL 628641 (N.D.N.Y.

Feb. 20, 2013) (Mordue, J.), ("Courts, including the District Court in this

case, 'maintain a singular focus on the facts alleged in the complaint' in

deciding whether a prisoner qualifies for the imminent danger exception."

(quoting *Cervantes*, 493 F.3d at 1053)); *Henderson v. Clover Field*, No.

08-CV-0504, 2008 WL 2405705, at *3 n.2 (N.D.N.Y. June 11, 2008)

(McCurn, J., *adopting report and recommendation by* Lowe, M.J.) ("When

determining whether a prisoner has qualified for the 'imminent-danger'

exception, courts look at the non-conclusory allegations in the plaintiff's

complaint." (listing cases)).[12]

In contrast to the Second and Ninth Circuit's apparent approaches to

making an imminent-danger determination, other courts, including the

Seventh Circuit, have found it appropriate to consider evidence submitted in

support of or opposition to the plaintiff's allegations.   In *Taylor*, decided

seven years after *Ciarpaglini*, the Seventh Circuit considered whether the

district court erred in holding an evidentiary hearing to examine the plaintiff's

---

[12]     The court in *Henderson* considered, for the first time, whether the plaintiff
qualified for IFP status based on the imminent-danger exception.   2008 WL 2405705, at
*1.   In contrast, the court in *Williams* considered whether the plaintiff was entitled to the
exception for a second time in light of the defendants' motion to dismiss based on an
assertion that the plaintiff's complaint did not allege facts plausibly suggesting he faced
imminent danger of serious physical injury.   2013 WL 636983, at *1.   Neither the
*Henderson* nor *Williams* courts, however, were asked to consider material outside of the
pleadings to make their determinations regarding imminent danger.

allegations regarding imminent danger.   *Taylor*, 623 F.3d at 485.   After

finding that *Ciarpaglini* merely held that "a court . . . should not attempt to

evaluate the seriousness of a plaintiff's claims," the court explained that

> it has never been the rule that courts must blindly
> accept a prisoner's allegations of imminent danger.
> Courts routinely deny IFP requests where the
> imminent-danger allegations are conclusory or
> ridiculous, or where they concern only past injuries.
> In the same vein, we agree with the district court in
> this case and the Third Circuit . . . that when a
> defendant contests a plaintiff's claims of imminent
> danger, a court must act to resolve the conflict.   A
> contrary conclusion would mean that a three-strikes
> plaintiff could proceed IFP whenever his allegations
> of imminent danger were facially plausible, even if
> the defendant had incontrovertible proof that
> rebutted those allegations.   Such a rule would allow
> easy evasion of the three-strikes rule.

*Id.* at 485.   As suggested in that passage, the Seventh Circuit's holding in

this regard is consistent with the view of the Third Circuit.   *See Gibbs v.*

*Roman*, 116 F.3d 83, 86 (3d Cir. 1997), *overruled on other grounds by*

*Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001), ("If the

defendant, after service, challenges the allegations of imminent danger . . .,

the district court must then determine whether the plaintiff's allegation of

imminent danger is credible. . . in order for the plaintiff to proceed on the

merits [IFP].").   The Tenth Circuit has similarly concluded that a court must

resolve a challenge to a preliminary finding that the plaintiff's complaint

alleged sufficient facts to entitle him for the imminent danger exception. *See Stine v. U.S. Fed. Bureau of Prisons*, 465 F. App'x 790, 794 n.4 (10th Cir. 2012) ("[A]fter a district court provisionally grants IFP on the basis of a showing of imminent danger, the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's provisional determination *on the face of the complaint* that [the prisoner] satisfies the imminent danger element." (quotation marks omitted, emphasis and alteration in original)).

After careful consideration, I find that the Second Circuit's suggestion in *Chavis* that courts should restrict their attention to the four corners of a complaint in connection with an imminent-danger inquiry applies only to the court's initial review of the complaint. The Second Circuit was not asked in *Chavis* to consider how a court should approach a defendant's subsequent challenge to an imminent-danger finding, nor was it asked to analyze evidence adduced after the complaint was filed that may refute a court's initial finding that the complaint plausibly alleged facts suggesting plaintiff was in imminent danger of a serious physical injury at the time the action was commenced. To the extent that a court may need to undertake a "detailed inquiry" when faced with a challenge to a preliminary finding that a plaintiff is entitled to the imminent-danger exception, *Chavis*, 618 F.3d at

169, I conclude that the Third, Seventh, and Tenth Circuits accurately rely on the court's obligation under section 1915(g) to ensure a plaintiff qualifies for IFP status before permitting a case to proceed. *See, e.g., Gibbs v. Cross*, 160 F.3d 962, 967 n.8 (3d Cir. 1998) ("We are mindful that [a section 1915(g) analysis] will often times necessitate further factfinding proceedings once the imminent danger allegation is challenged; a by product of the PLRA most likely not contemplated by Congress, but which must nonetheless be handled by the courts."). In my view, that obligation cannot be set aside merely because the issue involves a procedural matter.

Accordingly, I conclude that a court is permitted, and indeed has a duty, to examine all of the available evidence to determine whether a plaintiff's allegations regarding imminent danger to serious physical injury are credible, if challenged by a defendant. *Taylor*, 623 F.3d at 485; *Stine*, 465 F. App'x at 794 n.4; *Roman*, 116 F.3d at 86; *see also Tafari v. Baker*, No. 11-CV-0694, 2012 WL 5381235, at *1 (N.D.N.Y. Oct. 31, 2012) (Sharpe, C.J.) (finding it necessary to hold an evidentiary hearing to determine whether the plaintiff's allegations of imminent danger were credible). When examining the available evidence in this regard, I remain mindful that the analysis "should not evolve into a full-scale merits review, though in many cases, . . . the allegations of imminent danger are linked to

the allegations underlying the suit." *Taylor*, 623 F.3d at 486. "In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively, may hold a hearing."[13] *Roman*, 116 F.3d at 86-87; *accord, Tafari*, 2012 WL 5381235, at *6; *Taylor*, 623 F.3d at 486; *see also Pettus v. Oakes*, No. 09-CV-6263, 2010 WL 456782, at *2 (W.D.N.Y. Feb. 4, 2010) (relying on the allegations in plaintiff's amended complaint, the plaintiff's statements made during at a video conference, and a declaration submitted by the plaintiff's attorney to find that the plaintiff "exaggerated his claims in order to fit within the exception to the 'three-strikes' rule of [section] 1915(g)").

In this case, liberally construed, the allegations in plaintiff's complaint suggest that, at time of filing, he was in imminent danger of serious physical harm for three reasons. First, he alleges that he faced imminent danger based on the imposition by Upstate security staff of a restricted diet for more than seven days. Dkt. No. 1 at 17-18. Second, plaintiff alleges that he faced imminent danger due to the defendants' alleged failure to provide him with adequate medical treatment while at Upstate. *Id.* at 19-20, 32. Third,

---

[13] As it concerns the particular case now before me, it is worth noting that plaintiff has not objected to defendants' reliance on materials outside his complaint to support their motion to revoke his IFP status. *See generally* Dkt. No. 66. Indeed, in his response to that motion, plaintiff has submitted his own evidence for consideration. *Id.* Accordingly, it appears that plaintiff has waived any objection to the court's consideration of and reliance on all of the record evidence now before me in deciding the defendants' motion.

he alleges that he was in imminent danger because he continued to experience suicidal thoughts and defendants ignored his requests for care. *Id.* at 60. In support of their motion to revoke plaintiff's IFP status, defendants have submitted a declaration from defendant Lashway, a nurse practitioner at Upstate who appears to have served as plaintiff's primary care provider in and around the time his complaint was filed. Dkt. No. 59-1. Defendants also rely on plaintiff's medical records and a declaration from Dr. Robert Bentivegna, a physician employed at Green Haven Correctional Facility, both of which were submitted to the court in opposition to plaintiff's motion for a preliminary injunction. Dkt. Nos. 55, 56.

With respect to plaintiff's allegations that the restricted diet caused him to be in imminent danger of serious physical harm, I find that his medical records belie that allegation. Although it is true, as plaintiff alleges, that he complained to medical staff at Upstate regarding his stomach pains and constipation during the time that he was on the restricted diet, his medical records demonstrate that he either was seen by medical staff, or medical staff attempted to evaluate him, on each day he was on the diet. Dkt. No. 56 at 86-90. Medical staff did not report any serious medical concerns regarding plaintiff's health during that time. *Id.* In addition, defendant Lashway averred that the restricted diet is nutritionally adequate

and imposed as a disciplinary measure only after security staff consults with medical staff.   Dkt. No. 59-1 at 2.   In light of the daily monitoring plaintiff received by Upstate medical providers while on the restricted diet, and the medical records that demonstrate plaintiff was not suffering from any serious conditions during that time, I find he was not in imminent danger of serious physical injury at the time he commenced this action due to the imposition of the restricted diet.   *See Wallace v. Cockrell*, No. 03-MC-0060, 2003 WL 21528744, at *2 (N.D. Tex. July 3, 2003) (finding the plaintiff's allegation that he was being starved while on a food loaf diet did not establish entitlement to the imminent-danger exception).

Plaintiff also alleges that he was in imminent danger of serious physical injury due to defendants' discontinuation of his prescription for (1) an asthma inhaler; (2) Atorvastatin, Lipitor, or equivalent for treatment of high cholesterol; (3) Claritin, Loratadine, or equivalent for allergies; (4) Naproxen or equivalent for pain relief; (5) Docusate or another stool softener for constipation; and (6) eyeglasses.   Dkt. No. 1 at 19-20; Dkt. No. 66 at 7-8, 13.   In response to these allegations, defendant Lashway has averred that, on or about August 16, 2012, plaintiff was given his medications by a nurse employed at Upstate while in his cell, but instead of taking them, he threw them onto the floor outside his cell.   Dkt. No. 59-1 at

18

4; Dkt. No. 56 at 95.   Immediately following this incident, defendant Lashway undertook an evaluation of plaintiff's health status, which, in her opinion, revealed that he no longer needed those medications to maintain his general health.   Dkt. No. 59-1 at 4.   For that reason, and because of plaintiff's refusal to accept the medication, defendant Lashway discontinued his medications.[14]   *Id.*

Defendant Lashway also states that plaintiff's asthma inhaler prescription was never discontinued, and, on September 17, 2012, seven days after plaintiff filed his complaint in this action, he underwent a routine evaluation in accordance with his asthma treatment plan.   Dkt. No. 59-1 a 5; Dkt. No. 56 at 8.   During that evaluation, plaintiff claimed that he was not currently using his inhaler and had suffered no asthma-related episodes. Dkt. No. 59-1 at 5; Dkt. No. 56 at 8, 85.   In addition, because plaintiff complained at that appointment that certain of his medications had been discontinued, defendant Lashway refilled his prescriptions for Naproxen, Claritin, Lipitor, and Colace four days later.   Dkt. No. 56 at 18.

In general, plaintiff's medical records demonstrate that he was under close medical supervision in and around the time he filed his complaint in this matter.   *See generally* Dkt. No. 56.   He was informed who to speak to

---

[14]     As will be discussed below, defendant Lashway restarted him on his medications less than one month later.   Dkt. No. 56 at 18.

about his eyeglasses, his complaints were noted throughout his medical records, staff recorded their observations and opinions regarding plaintiff's status, and he was given medication when requested. *Id.* There is nothing in the record now before the court suggesting that, due to defendants' alleged failure to provide medicine, eyeglasses, or medical treatment to plaintiff, he was in imminent danger of an ailment that "could result in serious harm or even death" at the time he filed this action.[15] *Ibrahim*, 463 F.3d at 7.

Plaintiff's complaint also alleges that he "continue[s] feeling suicidal" and has informed all defendants of this. Dkt. No. 1 at 60. Plaintiff's medical records, however, do not note that he experienced suicidal ideations in or around September 2012. *See generally* Dkt. No. 56. Moreover, in her declaration, defendant Lashway states that, "had plaintiff articulated to anyone that he was suicidal or harbored thoughts of suicide, he would have been placed on a 1:1 watch and restricted to the infirmary under the supervision of personnel within the New York State Office of Mental Health." Dkt. No. 59-1 at 6. A review of plaintiff's medical records, however, reveals that he was not restricted in and around the time he filed

---

[15] In his response to the pending motion, plaintiff disputes defendant Lashway's veracity with regard to whether he refused medical care or medication. Dkt. No. 66 at 9, 12. His response, however, which is formatted as a letter addressed to me and is not signed under oath, does not point to any record evidence that would otherwise verify his statements. *See generally* Dkt. No. 66.

his complaint. *See generally* Dkt. No. 56.

Plaintiff's mental health records, which were submitted by plaintiff as an exhibit attached to his complaint, indicate that he allegedly swallowed fifty-five pills as a suicide attempt on July 18, 2012. Dkt. No. 4-3 at 155. As a result of that incident, plaintiff was transferred to a local hospital for evaluation and placed on one-to-one observation while at the hospital. *Id.* Upon his return to the prison facility, he was admitted to the Residential Crisis Treatment Program ("RCTP") where he remained on one-to-one observation every day until he was released back to SHU confinement. *Id.* at 155, 169-74. New York State Office of Mental Health ("OMH") staff evaluated plaintiff every day while he was in the RCTP and generated daily notes regarding his status. *Id.* at 169-74. Generally, those notes indicate plaintiff was calm and cooperative while in the RCTP from July 18, 2012, through July 23, 2012. *Id.* On July 23, 2012, a nurse practitioner evaluated plaintiff and reported in his records that he did not harbor suicidal or homicidal ideations. *Id.* at 168. The report also indicates that plaintiff "presents with no manic, no depressed, no anxious, no psychotic symptoms." *Id.* at 168. On that date, plaintiff was released back to the SHU. *Id.* A note in plaintiff's mental health records shows that prison officials followed up with him the next day, at which time they noted he slept

soundly, "[d]iscussed his court adventure," and showed no signs of acute distress. *Id.* at 175.

Aside from these records, there is no evidence now before the court regarding plaintiff's allegations of suicidal thoughts or ideations, including any suicidal thoughts he might have had in or around the time he filed his complaint in September 2012.   In any event, however, the mental health records regarding plaintiff's alleged suicide attempt in July 2012 demonstrate that his complaints were not ignored by anyone employed by the DOCCS or OMH.   They also reflect that, just days after his attempt, his suicidal thoughts subsided and he was returned to the SHU.   Accordingly, to the extent that plaintiff alleges that his suicide attempt in July 2012 establishes an imminent danger of serious harm in or around September 2012, when this action was commenced, I find that his mental health records refute that allegation.[16]

Based on the evidence now before me, including, as noted earlier, a clear record that plaintiff was under close medical care at the time this action was commenced, I find that he was not in imminent danger of serious physical harm due to defendants' alleged failure to respond to plaintiff's

---

[16]    I also note that, in response to the pending motion, plaintiff emphasizes that defendant Lashway does not work for the OMH and therefore does not have sufficient knowledge to testify regarding his suicidal thoughts.   Dkt. No. 66 at 14.   This assertion, however, is directly contradicted by the fact that, in his complaint, plaintiff explicitly alleged that he notified all defendants of his suicidal thoughts.   Dkt. No. 1 at 60.

complaints of feeling suicidal.

Finally, before concluding, I pause to respond to plaintiff's additional allegations set forth for the first time in his response to the pending motion. He alleges that he was in imminent danger of serious physical injury due to an alleged assault that occurred at Upstate on December 3, 2012, and January 25, 2013. Dkt. No. 66 at 17. As noted earlier, plaintiff's response to the pending motion is not verified or otherwise sworn under penalty of perjury, and thus constitutes mere argument rather than evidence. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995); *see also Smythe v. Am. Red Cross Blood Servs. NE N.Y. Region*, 797 F. Supp. 147, 152 (N.D.N.Y. 1992) (McCurn, J.) ("It is not well-settled that the legal memoranda and oral argument are not evidence[.]" (quotation marks omitted)). In addition, plaintiff's medical records in and around December 3, 2012, do not reflect any indication that plaintiff was "assaulted, beaten, and sexually abused" by correctional officers at Upstate. Dkt. No. 56 at 57-61. While his medical records surrounding January 25, 2013, reflect complaints from plaintiff that he was beaten and assaulted by prison staff, plaintiff's complaint in this action does not he allege that he suffered imminent danger at the time of filing due to a threat of assault by Upstate staff. *See generally* Dkt. No. 1. Moreover, to the extent that the complaint or plaintiff's response to the

pending motion could be construed as referencing a threat of physical assault by Upstate correctional staff, I find that they are merely conclusory. *See Ciarpaglini*, 352 F.3d at 331 ("Courts also deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous."); *Avent v. Fischer*, 07-CV-1135, 2008 WL 5000041, at *6 (N.D.N.Y. Nov. 20, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) ("[U]nless the prospect of . . . a future assault is so specific and/or likely as to be deemed *real*, such an allegation will not suffice to allege an 'imminent danger on the date of the filing. This point of law is consistent with the rather well-established rule that the imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical.") (quotation marks and citations omitted)).

For all of the foregoing reasons, I conclude that plaintiff is not entitled to the imminent-danger exception to the three-strikes rule under section 1915(g).

III.  <u>SUMMARY AND RECOMMENDATION</u>

My independent review of plaintiff's litigation history confirms the findings of District Judges Kahn and Mordue regarding the fact that plaintiff had accumulated three strikes within the meaning of section 1915(g) by the time this action was commenced. In addition, the record evidence, which

includes plaintiff's medical records while in the custody of the DOCCS, establishes that the court's preliminary finding of imminent danger cannot be substantiated.   Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's IFP status be revoked and he be ordered to pay the full $350 filing fee, with credit afforded for any amounts previously collected from his prison account and forwarded it to this court, within thirty days of the date of an order adopting this recommendation; and it is further

RECOMMENDED that, if plaintiff fails to timely comply with any directive to pay the full filing fee, his complaint be dismissed by the clerk without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P.   6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:          April 11, 2014
                Syracuse, New York

David E. Peebles
U.S. Magistrate Judge